UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LISSIE D. J.-H.,
          *Plaintiff[1]*,

    v.

COMMISSIONER OF SOCIAL SECURITY,
*et al.*,
          *Defendants.*

No. 1:24-cv-01836-MSN-IDD

## **MEMORANDUM OPINION**

This matter comes before the Court on the Report and Recommendation from Magistrate

Judge Ivan D. Davis (ECF 19) regarding Plaintiff's Motion for Summary Judgment (ECF 11), and

Defendant's Motion for Summary Judgment (ECF 14). The Magistrate Judge recommended that

the Court deny Plaintiff's Motion for Summary Judgment (ECF 11), grant Defendant's Motion for

Summary Judgment (ECF 14), and affirm the final decision of the Commissioner of the Social

Security Administration ("Commissioner"), denying Plaintiff disability insurance benefits for the

period of January 17, 2021, through March 4, 2024. The Court has reviewed the Report and

Recommendation, the parties' submissions, and the record herein. For the reasons that follow, the

Court overrules Plaintiff's objections (ECF 20) and adopts and approves the Magistrate Judge's

Report and Recommendation (ECF 19).

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts use only the first name and last initial of any non-government parties in Social Security cases due to privacy concerns endemic to such cases.

## I.    BACKGROUND

### A.    Legal Background

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, Administrative Law Judges ("ALJ"s) use the "five-step sequential evaluation process" set forth in 20 C.F.R § 404.1520(a)(4).

At step 1, the ALJ must determine whether the claimant has been working. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ assesses whether the claimant's medically determinable disabilities meet the regulation's severity and duration requirements. If not, or if the claimant has been working, the ALJ must find that the claimant is disabled. *Id.* § 404.1520(a)(4)(i)–(ii). Otherwise, the ALJ proceeds to step 3, where the ALJ must determine whether the claimant's disabilities meet or equal an enumerated impairment. *Id.* § 404.1520(a)(4)(iii). If the ALJ cannot make a conclusive determination at the end of step 3, the ALJ must assess the claimant's Residual Functional Capacity, "which is the most work-related activity the claimant can do despite all of her medically determinable impairments and the limitations they cause." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020). To assess the claimant's Residual Functional Capacity ("RFC"), the ALJ must identify the claimant's functional limitations or restrictions and assess the claimant's ability to do sustained work-related activities on a regular and continuing basis. *Id.*

After determining a claimant's RFC, the ALJ continues to step 4, which asks whether the claimant can still perform past relevant work given the limitations identified. 20 C.F.R.

2

§ 404.1520(a)(4)(iv). If not, the ALJ proceeds to step five to determine whether the claimant can perform other work given her RFC, age, education, and work experience. 20 C.F.R § 404.1520(a)(4)(v). If the claimant is able to perform other work, she is not disabled. *Id*.

### B.    Factual Background and Procedural History

On September 8, 2021, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 – 34, alleging disability since January 17, 2021. Administrative Record ("AR") 70. Plaintiff claimed that she was unable to work due to major depression; anxiety disorder; panic disorder; agoraphobia; asthma; chronic obstructive pulmonary disease ("COPD"); sleep apnea; chronic fatigue syndrome; diabetes mellitus, type II; and neuropathy. *Id.* The Social Security Administration ("SSA") initially denied Plaintiff's request for benefits on March 2, 2022, and denied Plaintiff's request for reconsideration on January 6, 2023. AR 97, 109. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") who considered Plaintiff's testimony, testimony from a vocational expert, and the opinions of various medical professionals. *See* AR 15, 25-28, 38-68.

Three of the medical opinions that the ALJ considered addressed Plaintiff's mental capacity. First, Dr. Stephen Saxby, an SSA medical consultant who reviewed Plaintiff's medical records, opined that Plaintiff had moderate limitations in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or in proximity to others without being distracted by them; and (5) complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. AR 79-80. Dr. Saxby

stated that, with these limitations, Plaintiff would be able to "understand, retain and follow simple job instructions, specifically performing one to two step tasks." *Id.* at 80. Dr. Saxby opined that, "[d]ue to [Plaintiff's] depression" she "may have difficulty maintaining attendance or being punctual and may occasionally miss work." *Id.* He also concluded that Plaintiff should "limit contact with the general public." *Id.* On the other hand, Dr. Saxby opined that Plaintiff can "frequently make decisions, and is able to carry out very short and simple instruction" and "shows no limitation in getting along with others including co-workers or accepting instruction or criticism from supervisors." *Id.*

A second SSA medical consultant, Leslie Montgomery, Ph.D., also reviewed Plaintiff's records and concluded that Plaintiff was moderately limited only in her ability to (1) carry out detailed instructions; (2) work in coordination with or in proximity to others without being distracted by them; (3) interact appropriately with the general public; and (4) get along with coworkers or peers. AR 93-94. Dr. Montgomery determined that, due to Plaintiff's mental health conditions, she would "be able to perform only very familiar or extremely routine procedures." *Id.* at 94. Dr. Montgomery also concluded Plaintiff could "interact appropriately with supervisors and coworkers" but could "interact with the public only for brief periods" and could "ask simple questions/request assistance only from well-known individuals." *Id.*

Lastly, physician's assistant ("PA") Shalini Jain, Plaintiff's treating medical provider, opined that Plaintiff has periodic anxiety that requires medication therapy, isolation, and family support and makes it difficult for her to understand, remember, and apply information, concentrate, and interact with others. AR 1543-44. PA Jain stated that Plaintiff's anxiety and depression would make it difficult for her to attend work up to three times a month. *Id.* at 1544. She also described as "extreme" Plaintiff's limitations in her ability to relate to co-workers, deal with the public,

4

interact with supervisors, deal with work stress, function independently, maintain attention/concentration, understand and remember information, and demonstrate reliability. *Id.* at 1545-46.

Considering the evidence as a whole, the ALJ concluded that Plaintiff was not engaged in gainful employment and had the following disabilities: generalized anxiety disorder; major depressive disorder; posttraumatic stress disorder; agoraphobia; psoriatic arthritis; degenerative disc disease; left foot fracture; chronic fatigue syndrome; diabetes mellitus, type 2; migraines; asthma; and obesity. AR 17. At step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met one listed in the regulations. AR 19.

The ALJ then considered Plaintiff's RFC. The ALJ noted that Plaintiff's medical records generally showed an anxious mood but intact memory, intact attention, good judgment and insight, normal thought content, logical thoughts, and a cooperative presentation. AR 23, 25. Plaintiff reported panic attacks in 2021, but they were relieved by medication and social isolation. *Id.* at 23. Plaintiff also reported increased anxiety in 2023, but did not want to change her medication. *Id.* In addition, the ALJ noted that, per Plaintiff's testimony, she was able to cook, care for her children and pets, drive, and go shopping at night. *Id.* at 25.

Turning to the medical opinions, the ALJ concluded that Dr. Saxby's opinions that Plaintiff could understand, retain, and follow simple instructions; could frequently make decisions and carry out very short and simple instructions; and should have limited contact with the public were all persuasive. *Id.* at 26. The ALJ noted, however, that Plaintiff needed greater limitations in terms of contact with the public than what Dr. Saxby described given Plaintiff's testimony and other information in the record. *Id.* As for Dr. Saxby's opinion that Plaintiff may occasionally miss work, the ALJ concluded that the statement was "vague and undefined," was inconsistent with the mostly

5

normal psychological examination findings throughout the record, and was inconsistent with Dr. Saxby's note that Plaintiff had only a moderate limitation in concentrating, persisting, and maintaining pace. *Id.* The ALJ thus concluded that Dr. Saxby's opinion about Plaintiff's ability to maintain attendance was unpersuasive. *Id.*

Considering Dr. Montgomery's opinions, the ALJ accepted the majority as persuasive. AR 26. But the ALJ rejected Dr. Mongtomery's opinion that Plaintiff could only perform very familiar or extremely routine procedures. The ALJ concluded that the opinion was inconsistent with Dr. Montgomery's other conclusion that Plaintiff had only a mild limitation in understanding and was inconsistent with the limitations prescribed by Dr. Saxby. *Id.*

Lastly, the ALJ decided that the opinions of PA Jain, Plaintiff's physician's assistant, were unpersuasive as they were "wholly unsupported by the mental status examination findings throughout the record of intact memory, intact attention, good judgment and insight, normal thought content, logical thoughts, a cooperative presentation, and good eye contact." AR 27. Furthermore, the ALJ determined that PA Jain's opinions were inconsistent with Plaintiff's reports and her testimony about her daily activities. *Id.*

Assessing the evidence as a whole, the ALJ concluded that Plaintiff's RFC is as follows: Plaintiff can "understand, remember and carry out simple instructions, but cannot work at a production pace . . .; can make simple, work-related decisions and tolerate few changes in a routine work setting; can frequently interact with supervisors and coworkers, but only occasional[ly] work in tandem, meaning working directly with others or teamwork; and can tolerate no interaction with the public." AR 22. With these limitations, the ALJ determined that Plaintiff could not perform her past relevant work as a home attendant. *Id.* at 29. Analyzing Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could work as a garment sorter, a marker,

or a mail clerk, non-postal. *Id.* at 30. The ALJ thus found that Plaintiff did not have a disability under the SSA and, on March 4, 2024, denied Plaintiff's claim. *Id.*

On October 17, 2024, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. ECF 1. Following cross motions for summary judgment, the Magistrate Judge concluded that substantial evidence supported the ALJ's findings and recommended affirming the ALJ's decision. ECF 19. Plaintiff now objects to the Magistrate Judge's findings about supportability of the RFC. ECF 20.

## II.    LEGAL STANDARD

"When considering a party's objections to the findings and recommendations of the Magistrate Judge, a district judge 'must determine de novo any part of the Magistrate Judge's disposition that has been properly objected to.'" *Pickett v. Astrue*, 895 F. Supp. 2d 720, 722-23 (E.D. Va. 2012) (quoting Fed. R. Civ. P. 72(b)(3)).

Federal courts reviewing an ALJ's decision regarding disability insurance benefits "must uphold the ALJ's decision if the ALJ applied correct legal standards and if the factual findings are supported by substantial evidence." *Drumgold v. Comm'r. of Soc. Sec.*, 144 F.4th 596, 604 (4th Cir. 2025) (quoting *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 382-83 (4th Cir. 2021)). "[S]ubstantial evidence" is a legal "'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102, (2019). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* (cleaned up). This is not a high threshold. *Id.* at 103. Substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In other words, courts look

7

only "to make sure that *something* more than a mere scintilla supports the decision, because we understand that ALJs are the front-line decisionmakers who are best positioned to decide which pieces of evidence are persuasive and which pieces of evidence are not." *Drumgold*, 144 F.4th at 604 (cleaned up).

## III.    DISCUSSION

Plaintiff raises three objections to the Magistrate Judge's recommendation that this Court affirm the ALJ's decision, each of which focuses on the ALJ's review of medical opinions and the construction of Plaintiff's RFC. ECF 20. First, Plaintiff argues that the ALJ erred by dismissing as unpersuasive Dr. Mongtomery's opinion that Plaintiff could only perform very familiar or extremely routine procedures. *Id.* at 2-4. Second, Plaintiff argues that, in formulating her RFC, the ALJ failed to properly account for Dr. Montgomery's opinion that Plaintiff is limited to asking simple questions or requesting assistance only from well-known individuals. *Id.* at 4-5. Finally, Plaintiff argues that the ALJ improperly rejected Dr. Saxby's opinion that Plaintiff may have difficulty maintaining attendance and may occasionally miss work. *Id.* at 5-7. The Court addresses each objection in turn.

### A.    Framework for Reviewing Medical Opinions

Under SSA regulations, ALJs must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, ALJs determine the weight to afford medical opinions according to a five-factor test that accounts for (1) an opinion's supportability, (2) its consistency, (3) the provider's relationship with the claimant, (4) their specialization, and (5) other factors. *Id.* § 4041520c(c). "Although the Social Security Administration must ultimately state the . . . reason or reasons upon which its final decision is based, an ALJ need not explain in detail how he evaluated the persuasiveness of each

piece of evidence in the record." *Drumgold*, 144 F.4th at 604-05 (cleaned up). "The ALJ only needs to say, for each 'medical source' in the record, how each of the first two factors applies—that is, whether that source's conclusions are supportable by medical evidence and consistent with the rest of the record." *Id.* (quoting 20 C.F.R. § 404.1520c(b)(1), -(2)).

In reviewing an ALJ's conclusions about medical testimony, courts must assess whether the ALJ examined the relevant evidence and "offered a sufficient rationale in crediting certain evidence and discrediting other evidence." *Drumgold*, 144 F.4th at 605 (quoting *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023)). In other words, an ALJ "must not only reach a conclusion supported by substantial evidence but also 'build an accurate and logical bridge from the evidence to their conclusions.'" *Id.* (quoting *Arakas*, 983 F.3d at 95).

### B.    Dr. Montgomery's Opinion that Plaintiff is Limited to Very Familiar or Extremely Routine Procedures

In his Report and Recommendation, the Magistrate Judge noted that the ALJ declined to give persuasive weight to Dr. Montgomery's opinion that Plaintiff could only perform very familiar or extremely routine procedures because the ALJ concluded that the opinion lacked consistency. ECF 19 at 8. Specifically, the ALJ concluded that the opinion was inconsistent with Dr. Montgomery's own finding that Plaintiff had only a mild limitation in understanding as well as the limitations given by Dr. Saxby. AR 26. The Magistrate Judge nevertheless determined that, even though the ALJ had found Dr. Montgomery's limitation to be unpersuasive, the RFC accounted for Dr. Montgomery's opinion by providing that Plaintiff could only "understand, remember and carry out simple instructions" and could "tolerate few changes in a routine work setting." ECF 19 at 8. The Magistrate Judge thus concluded that the ALJ did not err in failing to consider or afford proper weight to Dr. Mongtomery's opinion. *Id.*

Plaintiff disputes this conclusion. First, she contends that Dr. Montgomery's opinion limiting Plaintiff to very familiar or extremely routine procedures referred to Plaintiff's ability to interact with others, not her ability to understand concepts. ECF 20 at 3. Dr. Montgomery's opinion that Plaintiff has only a mild limitation in understanding therefore has no bearing on whether Plaintiff needed a strict routine. *Id.* Plaintiff further argues that the ALJ should not have dismissed Dr. Mongtomery's opinion simply because it was inconsistent with Dr. Saxby's assessment. *Id.* And she argues that the Magistrate Judge engaged in impermissible, post-hoc reasoning by concluding that Dr. Mongtomery's limitation was adequately reflected in Plaintiff's RFC. *Id.* at 3-4.

The Court perceives no error. As an initial matter, Plaintiff is incorrect that Dr. Mongtomery's opinion about Plaintiff's need for routine procedures related to her ability to interact with others. On the contrary, Dr. Mongtomery offered his opinion in response to a question about Plaintiff's ability to sustain concentration. AR 94. The ALJ accurately noted that Dr. Montgomery's severe restriction on Plaintiff's ability to adapt to different tasks was inconsistent with his observation that Plaintiff had only a mild limitation in her ability to understand, remember, and apply information. AR 26; 89. The ALJ also accurately noted that the restriction was inconsistent with Dr. Saxby's observations, which included that Plaintiff could "frequently make decisions and carry out short and simple instructions." AR 25-26. By pointing out that Dr. Montgomery's opinion conflicted with her own findings, as well as the findings of Dr. Saxby, the ALJ supported her conclusion with substantial evidence and built a logical bridge as to why the limitation was unpersuasive. *See, e.g.*, *Drumgold*, 144 F.4th at 605, 607.

Moreover, the Court agrees with the Magistrate Judge that, even if the ALJ had improperly assessed the consistency or supportability of Dr. Montgomery's recommended limitation, the ALJ

10

nonetheless accounted for the limitation in the RFC, rendering any error harmless. While the ALJ decided that Dr. Mongtomery's opinion about Plaintiff's need for routine was unpersuasive, the ALJ's RFC limited Plaintiff to a position where she needed to only understand, remember, and carry out simple instructions and tolerate few changes in a routine work setting. AR 22, 26. By restricting Plaintiff to simple, predictable tasks, the RFC accounted for Dr. Montgomery's recommendation.[2] Assigning persuasive value to Dr. Montgomery's opinion would not have changed the outcome of Plaintiff's disability determination, making the ALJ's failure to afford the opinion persuasive weight, at most, harmless error. *See Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2005) (concluding that any error an ALJ made in rejecting a medical opinion was harmless where the ALJ otherwise incorporated the opinion into the ALJ's conclusion).

C.      **Dr. Montgomery's Opinion Limiting Plaintiff to Asking Simple Questions of Well-Known Individuals**

Next, Plaintiff argues that the ALJ did not adequately account for Dr. Montgomery's opinion that Plaintiff could only ask simple questions or request assistance from "well-known individuals." ECF 20 at 4-5. The ALJ found to be persuasive Dr. Montgomery's general opinion that Plaintiff has moderate limitations in concentrating and interacting with others. R. 26. The ALJ then included in Plaintiff's RFC that Plaintiff could only "understand, remember and carry out simple instructions," could "make simple, work-related decisions," and could "tolerate no

---

[2] In her Objections, Plaintiff argues that, by concluding that Plaintiff's RFC adequately captured Dr. Montgomery's restriction, the Magistrate Judge engaged in an impermissible *post hoc* rationalization. ECF 20 at 3-4. But the Magistrate Judge did not attempt to supply a new rational for rejecting Dr. Montgomery's opinion as unpersuasive. *See Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013) (explaining that "*post hoc* rationalization" involves advancing new arguments during litigation to justify a prior agency action). Instead, the Magistrate Judge determined that, even if the ALJ *had* erred in concluding that Dr. Montgomery's opinion was unpersuasive, that conclusion did not affect the outcome of Plaintiff's RFC. *See, e.g.*, *Carlos F. v. Kijakazi*, No. 22-cv-2049, 2023 WL 3293086, at *4 (D. Md. May 5, 2023) (noting that remand is required where an ALJ fails to properly assess the persuasiveness of a medical opinion which, if "properly evaluated . . . may have changed the ultimate disability determination").

interaction with the public" but could "frequently interact with supervisors and coworkers." AR 22.

Plaintiff contends that the ALJ erred by not also including in the RFC the specific limitation that she can only ask "simple questions." ECF 20 at 4-5. Plaintiff further argues that, by permitting interaction with supervisors and co-workers, the RFC does not capture the limitation that she can only interact with well-known individuals because her coworkers and supervisors will not be well known to her when starting a job. ECF 20 at 5.

The Court concludes that the ALJ adequately accounted for Dr. Montgomery's opinions. In fashioning an RFC, ALJs need not adopt physicians' opinions "word for word." *Edrwin v. Astrue*, No. 3:09-cv-679, 2010 WL 6243333, at *8 (E.D. Va. May 21, 2010), *report and recommendation adopted* 2011 WL 1086473 (E.D. Va. Mar. 23, 2011). Nor must they specifically accept or reject "every limitation contained in a report the ALJ has discussed . . . so long as the reviewing court can ascertain the basis for the ALJ's findings." *Owens v. Kijakazi*, No. 22-1273, 2023 WL 2344224, at *3 (4th Cir. Mar. 3, 2023). Here, the ALJ discussed, with citations to the record, why she found to be persuasive Dr. Montgomery's opinion that Plaintiff is moderately limited in her ability to concentrate and interact with others. AR 26. The ALJ then devised an RFC that limited Plaintiff to carrying out simple instructions and making only simple decisions in a routine work setting with no public interaction. AR 22. The RFC of being able to carry out only simple instructions, and make simple decisions in a routine setting with no public interaction is simply a restatement of Dr. Montgomery's limitation. At bottom, both express that Plaintiff cannot be given complex tasks that require interaction with strangers.

Moreover, while Plaintiff contends that her coworkers may not be "well known" to her, this argument overstates Dr. Montgomery's opinion. Dr. Montgomery's conclusions, which the

12

ALJ generally found to be persuasive, included that Plaintiff "could interact appropriately with supervisors and coworkers." AR 94. By constraining Plaintiff to working with coworkers and supervisors, rather than the public, on simple, routine tasks, the ALJ appropriately accounted for Dr. Montgomery's limitations, and Plaintiff's RFC on this point is supported by substantial evidence.

### D.    Dr. Saxby's Opinion that Plaintiff May Occasionally Miss Work

Finally, Plaintiff argues that the ALJ erred in failing to accord weight to Dr. Saxby's opinion that Plaintiff would have difficulty maintaining attendance or being punctual and may occasionally miss work. ECF 20 at 5.

In determining that Dr. Saxby's opinion was unpersuasive, the ALJ found that the opinion conflicted with Plaintiff's mostly normal psychological examination findings throughout the record, findings that the ALJ cited to and explained in depth. *Id.* at 23, 26. The ALJ concluded that the opinion also conflicted with Dr. Saxby's own opinion that Plaintiff had only a moderate limitation in concentrating, persisting, and maintaining pace. *Id.* at 26. Furthermore, the ALJ noted that the opinion was unpersuasive because it was "vague and undefined." *Id.*

The Court will not disturb the ALJ's conclusion. As courts in this circuit have concluded, ALJs may decline to assign weight to medical opinions that contain no specific limitations and are thus "vague and unsupported." *Betty C. v. Comm'r, Soc. Sec. Admin.*, No. 1:23-cv-00246-JMC, 2023 WL 7386206, at *5 (D. Md. Nov. 8, 2023). Plaintiff herself points out that the SSA has defined the word "occasionally," to mean "occurring from very little [to] up to one-third of the time." SSR 83-10, 1983 WL 31251 (Jan. 1, 1983); ECF20 at 6. By encompassing such a wide range, Dr. Saxby failed to provide a clear limitation as to Plaintiff's ability to maintain attendance. The ALJ thus reasonably concluded that opinion lacked support and could not be administered.

Substantial evidence also supports the ALJ's conclusion that Dr. Saxby's opinion was inconsistent with Plaintiff's psychological examination findings and Dr. Saxby's other conclusions. As the ALJ described, Plaintiff's medical records show that while she sometimes presented with an anxious mood, had poor insight, and tangential thoughts, most of her examinations showed "intact memory, intact attention, good judgment and insight, normal thought content, logical thoughts, a cooperative presentation, and good eye contact." AR 23, 26. The ALJ cited to these medical reports throughout the record to conclude that Plaintiff's "mostly normal psychological examination findings" conflicted with Dr. Saxby's limitation. AR 26.

Plaintiff nevertheless argues that the ALJ should have adopted Dr. Saxby's limitation because other medical providers, such as PA Jain, also opined that Plaintiff would have difficulty maintaining attendance. *See* ECF 20 at 7; AR 1544. But PA Jain's opinion, which the ALJ found unpersuasive, does not change the underlying medical records that the ALJ reviewed. And Dr. Saxby's opinion was also inconsistent with the observations of Dr. Montgomery who found that Plaintiff was not significantly limited in her ability to complete a normal workday and workweek. AR 93.

Lastly, Plaintiff takes issue with the ALJ's finding that Dr. Saxby's opinion was inconsistent with his observation that Plaintiff was moderately limited in her ability to complete a normal workday and workweek and perform at a consistent pace. AR 80. Plaintiff's argument, however, demonstrates the underlying issue with Dr. Saxby's recommendation. A "moderate" limitation is defined as someone whose functioning is "fair." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(c). If Dr. Saxby meant to state that Plaintiff would, on very few occasions, be unable to maintain attendance, then his opinions may be consistent with one another. But if Dr. Saxby

14

meant to state that Plaintiff may be absent up to one-third of the time, then Plaintiff's functioning cannot be said to be "fair."

The ALJ's task as "[t]he trier of fact" was to "resolve" "conflicting medical evidence" and demonstrate a logical connection between the evidence and their conclusions. *Drumgold*, 144 F.4th at 605 (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). By analyzing the supportability and consistency of Dr. Saxby's recommendation, based on the evidence in the record, the ALJ met that burden, and the Court must sustain the ALJ's decision.

## IV.   CONCLUSION

For the foregoing reasons, the Court will adopt and approve the Magistrate Judge's Report and Recommendation, deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, and affirm the final decision of the Commissioner of the Social Security Administration in an order to be issued with this Memorandum Opinion.

**SO ORDERED.**

_____/s/_____
Michael S. Nachmanoff
United States District Judge

March 24, 2026
Alexandria, Virginia

15